Filed 08/20/24  P. v. Pulley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C097480 |
| Plaintiff and Respondent, | (Super. Ct. No. 62180526A) |
| v. | |
| DESLONDE STEVEN PULLEY, | |
| Defendant and Appellant. | |

A jury found defendant Deslonde Pulley guilty of one count of pandering and one count of pimping, and the trial court found true other aggravating circumstances in a bifurcated bench trial. The trial court sentenced defendant to six years in prison.

On appeal, defendant contends: (1) the trial court prejudicially erred in permitting expert witnesses to respond to hypothetical questions that closely tracked the evidence and to opine that defendant was in a pimping or pandering relationship; (2) he received ineffective assistance of counsel if we conclude he forfeited his challenge to the expert testimony; (3) the trial court prejudicially erred in declining to give a pinpoint jury instruction; (4) the trial court's errors caused cumulative prejudice against him; and

1

(5) there was insufficient evidence to support the jury's finding that he was guilty of pimping.

We agree with defendant that the trial court erroneously admitted expert testimony as to the existence of a pimping or pandering relationship, but conclude the error was harmless. We reject defendant's other claims and affirm the judgment. Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2020, Detective Steven Foster responded to a woman's online prostitution ad as part of a human trafficking sting operation. They agreed to meet at a hotel room to have sex for a price. Detective Foster and several other officers arrived at the hotel in uniform and asked the receptionist for information about the hotel room. While they were speaking, defendant walked by and the receptionist gestured at him, suggesting he was connected to the hotel room. The officers then went upstairs towards the hotel room and saw defendant in the parking lot from the second-floor window. The woman texted Detective Foster, stating there were police officers in the hotel and refused to meet him. Detective Foster knocked on the hotel room door, but no one answered.

Detective Foster then moved to the hallway near the elevator, where he saw defendant walk up the stairs and knock on the same hotel room door. The door opened, defendant went inside, and later came out withice4 a woman who resembled the picture on the prostitution ad. Detective Foster arrested defendant and the woman.

A jury found defendant guilty of pandering by encouraging (§ 266i, subd. (a)(2), count 1) and pimping (§ 266h, subd. (a), count 2). In a bifurcated bench trial, the trial court found true that defendant had a prior strike conviction (§§ 211, 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), that defendant's prior convictions as an adult were numerous (Cal. Rules of Court, rule 4.421(b)(2)), and that defendant had served two prior prison terms (Cal. Rules of Court, rule 4.421(b)(3)). The prior strike was later dismissed.

2

The trial court sentenced defendant to prison for the upper term of six years for pimping and imposed a stayed sentence of four years (middle term) for pandering. Defendant timely appealed.

## DISCUSSION

### I

### *Expert Testimony*

Defendant contends the trial court erred by: (1) admitting expert testimony from Detective Foster and Detective David Tuggle stating that defendant and the woman had a pimping or pandering relationship based on their text messages; and (2) permitting Detective Foster to respond to "thinly disguised" hypothetical questions that closely tracked the evidence of the case. He further contends the errors violated his federal constitutional rights to the presumption of innocence, to a fair trial, and to due process under the Fifth, Sixth, and Fourteenth Amendments. We conclude that the expert testimony responding to hypothetical questions was properly admitted, but the testimony as to the pimping or pandering relationship was not. However, the error was harmless.

A. *Additional Background*

Defense counsel moved in limine to exclude any expert testimony on the behaviors of pimps and prostitutes and on whether defendant and the woman had a pimping or pandering relationship, citing Evidence Code section 720 and *People v. Leonard* (2014) 228 Cal.App.4th 465 (*Leonard*). Defendant's motion stated "[t]he proposed expert testimony is a usurpation of the jury's role as fact-finder" and "an expert may not opine on whether a defendant's actions meet the elements of the charged offenses." At the motion in limine hearing, defense counsel stated "it would be almost impossible for an expert to testify that [defendant] was acting as a pimp and not simultaneously infer his guilt." The prosecutor agreed, acknowledging the expert can only "explain the subculture, the different types of pimping and pandering relationships, and explain the language used interpreting the text message themselves."

3

The trial court admitted expert testimony on the culture of pimping and pandering and allowed the expert to consider whether text messages were consistent with the culture. But it stressed that the use of expert testimony must be consistent with *Leonard* and that the expert cannot offer opinion on guilt or innocence.

At trial, both Detective Foster and Detective Tuggle testified as the prosecution's expert witnesses on human trafficking and pimping and pandering. Detective Foster explained it is common for a pimp or panderer to keep track of a prostitute's date, to stay close to the prostitute, and to conduct counter surveillance including looking out for law enforcement. It is also common for the prostitute to immediately give her pimp or panderer the money she receives from the sex buyer. These practices allow the pimp or panderer to protect the prostitute and ensure that the prostitute is properly compensated.

The prosecutor also asked Detective Foster to interpret certain text messages between defendant and the woman. During a conversation about a sex buyer who had trouble paying, defendant accused the woman of "free fucking" and told her to "[g]et up let's go or I'm getting up out this car and acting up." Detective Foster opined that this conversation was consistent with a conversation of a pimp or panderer with a prostitute.

On a different occasion, defendant urged the woman to "give [a potential sex buyer] a try tomorrow." The woman initially refused, stating "I think he was up to something." But defendant insisted: "I mean he got 50 dollars[.] We could use the money . . . He[ ][m]ight become a regular[.] Give him a try[.] Fuck if he's a pimp he gonna let you know. If he's a [sex buyer]. He will pay [y]ou[.]" The woman was eventually persuaded. Defendant added: "Just. Check him out. I'll be close if shit go wrong. He might just want some pussy." Detective Foster opined that this was consistent with a discussion between a prostitute and a pimp or panderer about a potential sex buyer.

Detective Foster further testified that he did not find anything in the text messages that was inconsistent with a pimping or pandering relationship.

4

Detective Foster also responded to four hypothetical questions raised by the prosecutor, confirming the scenarios therein were consistent with a pimping or pandering relationship: (1) an "individual [who] knows that a prostitute is operating out of a hotel room . . . stays in close contact with that prostitute during her dates via text message and purposely stays close to the room, either in the staircase or outside in a parked car"; (2) "that same individual that is conversing with the sex worker that they are close and being a task master as to how long the date should go . . . tells the prostitute that he will get out of the car and act up if the client doesn't pay"; (3) "that individual tells the prostitute not to open a door to a potential client until he checks around to see if law enforcement is present" and (4) the individual "tells the prostitute 'we can use the money' when texting about a potential date with a [sex buyer]."

Detective Tuggle testified that it is common for pimps to stay close to the prostitute if they are at the same location and explained a "boyfriend pimp" relationship. The prosecutor asked Detective Tuggle: "[Y]ou saw [defendant] walking out of the lobby as you and Detective Foster were speaking to the . . . hotel worker there. And then a few minutes later you see him parked in . . . a vehicle facing the hotel. Based on your training and experience, you mentioned earlier that it's common for pimps and panderers to conduct counter surveillance. Is part of what you mean by counter surveillance of a pimp or panderer's job to look out for law enforcement?" Detective Tuggle responded affirmatively, explaining that the industry is dangerous and a pimp or panderer usually stays close to protect the prostitute. The trial court overruled defense counsel's intervening Evidence Code section 352 objections.

The jury was instructed that, to prove defendant guilty of pandering, the prosecutor must prove: (1) defendant used any device or scheme to encourage the woman to become a prostitute, although defendant's efforts need not have been successful; and (2) defendant intended to influence the woman to be a prostitute. And to prove defendant guilty of pimping, the prosecutor must prove: (1) defendant knew that

5

the woman was a prostitute; and (2) the money that the woman earned as a prostitute supported defendant, in whole or in part.  For both crimes, a "prostitute" is defined as "a person who engages in sexual intercourse or any lewd act with another person in exchange for money or other compensation."  The jury was further instructed that it was not required to accept expert opinion as true or correct.

At closing, the prosecutor argued the text conversation where defendant encouraged the woman to give a potential sex buyer "a try" because "he got 50 dollars" and "we could use the money" was sufficient to support both charges, and the jury "didn't really need an expert opinion from Detective Foster or Detective Tuggle" to make its decision.

### B.    Forfeiture

Defendant did not object to the admission of expert testimony based on the Fifth, Sixth, or Fourteenth Amendments in the trial court.  But a defendant's new federal constitutional arguments are not forfeited on appeal to the extent the "new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional *legal consequence* of violating the Constitution."  (*People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17, citing *People v. Partida* (2005) 37 Cal.4th 428, 433-439.)  Because defendant argued in the trial court that the expert testimony exceeded the permissible scope and usurped the jury's function, he may argue on appeal that the error has the additional legal consequence of violating his federal constitutional rights.

Having concluded defendant preserved his challenge to the admission of expert testimony, we need not address his ineffective assistance of counsel claim.

### C.    The Admission of Expert Testimony

An expert witness may opine on "a subject that is sufficiently beyond common experience" even if his opinion "embraces the ultimate issue to be decided by the trier of

6

fact." (Evid. Code, §§ 801, subd. (a), 805.) The expert may also " 'render opinion testimony on the basis of facts given "in a hypothetical question that asks the expert to assume their truth." ' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1045.) "Such a hypothetical question must be rooted in facts shown by the evidence" and may mirror case-specific facts. (*Ibid.*) In fact, "[a] hypothetical question not based on the evidence is irrelevant and of no help to the jury." (*Id.* at p. 1046.)

On the other hand, an expert "may not express an opinion on a defendant's guilt." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) "The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] 'Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.' " (*Ibid.*)

In *Leonard*, the detective who investigated the defendant's case also testified as an expert on the pimping subculture. (*Leonard, supra*, 228 Cal.App.4th at p. 476.) He explained the difference between a "finesse pimp" and a "gorilla pimp" and offered his opinion on the type of pimping relationship between the defendant and the prostitute. (*Id.* at p. 492.) The court of appeal there observed the expert's testimony "could reasonably be interpreted as unhelpful comments on [the defendant's] guilt or innocence on the charge of pimping. [Citation.] The jury was as qualified as [the expert] to determine whether the evidence showed [the defendant] was acting as a 'gorilla pimp' or 'finesse pimp,'. . . after [the expert] had explained those terms." (*Id.* at p. 493.) Without deciding whether the trial court abused its discretion in admitting the testimony, *Leonard* concluded any error was harmless under *People v. Watson* (1956) 46 Cal.2d 818. (*Leonard,* at p. 493.)

"We review the trial court's ruling on the admissibility of expert testimony for abuse of discretion." (*People v. Brown* (2016) 245 Cal.App.4th 140, 157.) A trial court

7

abuses its discretion when its ruling transgresses the confines of the applicable principles of law governing admission of expert testimony. (*Ibid.*) Separately, we review de novo whether the admission of evidence violates a defendant's federal constitutional rights. (*People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 23-24.)

Here, Detective Tuggle's testimony did not exceed the permissible scope. He may explain to the jury a pimp's common practice and a "boyfriend pimp" relationship. (See *U.S. v. Taylor* (9th Cir. 2001) 239 F.3d 994, 998 ["the relationship between prostitutes and pimps is not the subject of common knowledge"].) Although the prosecutor also recounted Detective Tuggle's encounter with defendant, he followed with only a question about whether counter surveillance involved looking out for law enforcement. Detective Tuggle's response did not opine on whether defendant conducted counter surveillance as a pimp or panderer, but stated generally that looking out for law enforcement is part of the counter surveillance and that counter surveillance was made necessary by the potential danger in the industry. He thus gave no opinion on defendant's guilt.

Detective Foster's responses to the hypothetical questions were properly admitted. The questions were based on evidence in this case and were unrelated to defendant. Although they mirrored case-specific facts, "[t]he questioner is not required to disguise the fact the questions are based on that evidence." (*People v. Vang, supra*, 52 Cal.4th at p. 1041.) Detective Foster did not express his opinion about defendant himself in answering these questions and thus offered no opinion on defendant's guilt.

Defendant contends the hypothetical questions were "so thinly disguised that it had to be apparent to the jury that the prosecutor was asking about the facts of the current case," citing *People v. Killebrew* (2002) 103 Cal.App.4th 644. But *Killebrew* has been disapproved by our Supreme Court because "it overlooked the critical difference between an expert's expressing an opinion in response to a hypothetical question and the expert's expressing an opinion about the defendants themselves." (*People v. Vang, supra*, 52 Cal.4th at p. 1049.) To the extent the expert's testimony responds to hypothetical

8

questions, it expresses no opinion on the defendant's guilt or how the jury should decide the case. (*Ibid.*) Moreover, to find a hypothetical question improper merely because it tracks the evidence in a manner that was "thinly disguised" "transforms the *requirement* that a hypothetical question be rooted in the evidence into a *prohibition*—or at least into the confounding rule that the party posing the question must disguise from the jury the fact it is rooted in the evidence — and not 'thinly,' it appears, but thickly." (*Id.* at p. 1046.)

On the other hand, Detective Foster improperly offered his opinion that the text messages between defendant and woman, where defendant accused the woman of performing free sex services and urged her to see a potential buyer because they needed 50 dollars, demonstrated they had a pimping or pandering relationship; it was further improper for Detective Foster to opine that nothing in the text messages was inconsistent with a pimping or pandering relationship. The jury was instructed on the definition of pimping and pandering, and both experts explained the common practice of a pimp or a panderer. With this information, the jury was as capable as Detective Foster to determine whether a pimping or pandering relationship existed between defendant and the woman based on the text messages. Detective Foster therefore improperly gave an opinion on defendant's guilt. We next consider whether this error was harmless.

D.      *Harmless Error*

The parties disagree on the appropriate test for evaluating whether the error was prejudicial. Defendant contends the beyond-a-reasonable-doubt test under *Chapman v. California* (1967) 386 U.S. 18 applies, while the People rely on the reasonably probable test under *People v. Watson, supra*, 46 Cal.2d 818. Without settling this dispute, we conclude the error was harmless even under the more stringent *Chapman* test.

The beyond-a-reasonable-doubt test in *Chapman* "requires the People here 'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*People v. Elizalde* (2015) 61 Cal.4th 523, 542.) " ' "To say that an

9

error did not contribute to the ensuing verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 463.) " 'Thus, the focus is what the jury actually decided and whether the error might have tainted its decision. That is to say, the issue is "whether the . . . verdict actually rendered in this trial was surely unattributable to the error." ' " (*Ibid.*)

Here, the verdict was surely unattributable to the error. The jury was instructed that to be found guilty of pandering, defendant must intentionally encourage the woman to engage in sexual intercourse with another person in exchange for money; and to be found guilty of pimping, defendant must know the woman was a prostitute and the money she earned as a prostitute supported defendant. It was further instructed that it need not accept expert opinions as true or correct. A text message thread showed defendant encouraged the woman, despite her initial reluctance, to see a potential sex buyer for 50 dollars because they "could use the money." The prosecutor argued to the jury at closing that this message alone was sufficient for them to find defendant guilty on both counts, and they did not need to rely on either Detective Foster's or Detective Tuggle's expert opinion. Moreover, a different text conversation showed defendant became irritated when he thought the woman was not properly compensated for her sex work.[1] And Detective Foster opined that hypothetical situations similar to the ones in this case were consistent with a pimping or pandering relationship. In light of the above compelling and properly admitted evidence, the verdict was not attributable to Detective Foster's improperly admitted testimony. Thus, any error in admitting this testimony was harmless beyond a reasonable doubt.

---

[1] These two text conversations also defeat defendant's argument that no substantial evidence showed he derived support from money earned by the woman as a prostitute.

## II

### *Jury Instruction*

Defendant contends the trial court prejudicially erred in declining to give a pinpoint instruction related to the defense theory that defendant's actions were not part of pandering but of a dating relationship. We disagree because the proposed pinpoint instruction was redundant in light of the general pandering instruction.

### A.    *Additional Background*

Defense counsel requested the trial court to give a special instruction that "the mere knowledge that a person with whom the defendant was in a dating relationship that she was a prostitute is not pandering. Merely acting as a lookout or offering to act to protect a person that the defendant knows is a prostitute is not pandering." The trial court denied the request.

During closing, defense counsel argued to the jury that defendant had merely "f[allen] in love with a woman that was a prostitute and was addicted to drugs, and he was seemingly caught in between her bad life choices. He is a byproduct of her decisions."

### B.    *Analysis*

A pinpoint instruction "relate[s] particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) "A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) "But where standard instructions fully and adequately advise the jury upon a particular issue, a pinpoint instruction on that point is properly refused." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 857.) "Put another way, '[t]here is no error in a trial court's failing or refusing to instruct on one matter, unless the remaining instructions, considered as a whole, fail to cover the material issues raised at trial." (*People v. Jo* (2017)

11

15 Cal.App.5th 1128, 1174.) We review the trial court's denial of the requested pinpoint instruction for abuse of discretion. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 497.)

Here, the trial court did not abuse its discretion by denying defendant's request. The general instruction on pandering specifically requires the jury to find that defendant encouraged the woman to engage in sexual intercourse with another person in exchange for money, and that defendant did so intentionally. This instruction adequately covered the valid points in the proposed pinpoint instruction, namely, the mere knowledge that the woman was a prostitute or the mere act of surveillance or protecting the woman would not support a guilty finding. Thus, the pinpoint instruction requested by defendant was unnecessary.

Having reached both this conclusion and the above conclusion that the admission of Detective Foster's expert testimony was harmless beyond a reasonable doubt, we find no cumulative prejudice.

DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
KRAUSE, J.

13